IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02723-RBJ
*Consolidated Cases: 17-cv-00485; 17-cv-00502; 17-cv-00509; 17-cv-00667; and 17-cv-00791*

JEREMY LEE SCARLETT, on behalf of himself and all others similarly situated,

      Plaintiff,

v.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

      Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter is before the Court on defendants Air Methods Corporation's and Rocky Mountain Holdings, LLC's ("defendants") motion to dismiss plaintiffs Randal Cowen, et al.'s Second Amended Class Action Complaint, ECF No. 62, and defendants' motion to dismiss plaintiff Jeremy Lee Scarlett's Consolidated Class Action Complaint, ECF No. 63. For the reasons stated herein, the motions are GRANTED.

## I. BACKGROUND

### A. **Factual Background.**

This is a proposed class action brought on behalf of patients, their legal custodians, or the estates of deceased patients, who allege they were charged exorbitant fees by defendants for medical transport by helicopter. ECF Nos. 59, 60. The named plaintiffs are residents of various states and bring their action on behalf of a class of plaintiffs transported within the 48 contiguous states. ECF No. 60 at 2–3. Defendant Air Methods Corporation ("Air Methods") is an air

1

ambulance company with a principle place of business in Englewood, Colorado, while defendant Rocky Mountain Holdings, LLC, is the holding company that owns Air Methods and directs collection efforts jointly with Air Methods. ECF No. 59 at 10. Plaintiffs' claims stem from the allegedly unreasonable amounts defendants charge to provide air ambulance transportation despite there being no valid agreement as to price before the transportation occurs. *Id.* at 4. In general, at the time defendants provide medical air transportation, "the patients are suffering a medical emergency, unable to manifest assent, unable to voluntarily contract, and unable to negotiate any terms or conditions necessary to a voluntary undertaking." *Id.*

Plaintiffs allege that after providing medical air transport, defendants typically invoice patients upwards of $40,000 for air ambulance transportation services only, excluding any medical services provided en route. *Id.* at 2; *see also* ECF No. 60 at 3 (noting the average price charged to the *Scarlett* plaintiffs was more than $52,000). In many cases, after defendants send patients an invoice they ask them to provide an "Assignment of Benefits" prepared by defendants, which authorizes direct payment to defendants and assigns them the patients' insurance coverage rights. ECF No. 59 at 3; ECF No. 60 at 17. After patients' insurers pay what they deem to be the reasonable value of the services, defendants typically demand that patients pay the remainder of the charged amount. ECF No. 59 at 4. Plaintiffs claim that defendants have initiated collection efforts against them, and in some cases defendants have filed state-court breach of contract claims and other suits to collect their charges from plaintiffs. ECF No. 59 at 2; ECF No. 60 at 35.

**B. Procedural Background.**

This action is comprised of two separate complaints. The first, *Cowen v. Air Method Corporation, et al.*, No. 17-cv-00791-RBJ, was filed by four plaintiffs on behalf of a class of

similarly situated individuals. ECF No. 59. The *Cowen* plaintiffs raise claims for declaratory

and injunctive relief, breach of contract, and equitable restitution. *Id.* at 19–26. The second

complaint, *Scarlett v. Air Methods Corporation, et al.*, No. 16-cv-2723-RBJ, consolidated four

similar class actions. ECF No. 60. The *Scarlett* complaint raises claims for breach of implied

contract and for declaratory and injunctive relief. *Id.* at 38–46.

Although the two complaints allege nearly identical facts, they rely in part on distinct

legal theories. Both sets of plaintiffs argue at least nominally that the Airline Deregulation Act

(the "ADA") should not preempt the application of state common law to determine a reasonable

price for defendants' air ambulance services. The *Cowen* plaintiffs advocate the use of federal

common law in the event the ADA is found to preempt state common law. The *Scarlett*

plaintiffs contend the ADA is unconstitutional as applied if it is found to preempt state common

law.

Defendants have moved to dismiss both complaints. These motions have been fully

briefed, and the Court heard oral argument on the motions on September 27, 2017. *See* ECF

Nos. 62–67, 70. Following oral argument, the parties provided supplemental briefing. *See* ECF

Nos. 71, 72. The United States Government has intervened to defend the constitutionality of the

ADA. ECF No. 87.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss the complaints must contain "enough facts

to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

A court may dismiss a claim "under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

### III. ANALYSIS

**A. Overview of Preemption Analysis Under the Airline Deregulation Act.**

Because both motions to dismiss contend that the complaints are preempted by the ADA, an overview of that statute and its preemption provision will assist in assessing the parties' arguments. The ADA was enacted in 1978 to "promote 'efficiency, innovation, and low prices' in the airline industry through 'maximum reliance on competitive market forces and on actual and potential competition.'" *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1428 (2014) (quoting 49 U.S.C. §§ 40101(a)(6), (a)(12)). The ADA includes a preemption provision intended to "ensure that the States would not undo federal deregulation with regulation of their own." *Id.* at 1428. This provision dictates that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this part." 49 U.S.C § 41713(b)(1).

In *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 383 (1992), the Supreme Court explained that the ADA's preemption clause applies broadly to preempt "state enforcement

actions having a connection with or reference to airline 'rates, routes, or services.'"  Thus in

*Morales*, the ADA preempted state consumer laws that regulated airline advertising.  *Id.*  State

common law rules are similarly preempted because they have "the force and effect of law" just

as legislation and regulation do.  *Ginsberg*, 134 S. Ct. at 1430.  "What is important . . . is the

effect of a state law, regulation, or provision, not its form, and the ADA's deregulatory aim can

be undermined just as surely by a state common-law rule as it can by a state statute or

regulation."  *Id.*

The Supreme Court carved out an exception from ADA preemption for suits "seeking

recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  *Am.*

*Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995).  The so-called "*Wolens* exception" is

premised on the fact that "[t]erms and conditions airlines offer and passengers accept . . . are

privately ordered obligations and thus do not amount to a State's 'enactment or enforcement of

any law, rule, regulation, standard, or other provision having the force and effect of law' within

the meaning of the ADA preemption provision."  *Ginsberg*, 134 S. Ct. at 1429.

In the context of state common law obligations, such as the implied covenant of good

faith and fair dealing, the *Ginsberg* Court instructed that courts must determine whether the

obligation is "a state-imposed obligation or simply one that the parties undertook."  *Id.* at 1431.

The Court explained that "[w]hen the law of a State does not authorize parties to free themselves

from the covenant, a breach of covenant claim is preempted under the reasoning of *Wolens*."  *Id.*

at 1432.  According to the state law at issue in *Ginsberg*, "the implied covenant must be regarded

as a state-imposed obligation" because the "parties cannot contract out of the covenant."  *Id.*

**B. <u>Motion to Dismiss the *Scarlett* Complaint [ECF No. 63].</u>**

The *Scarlett* plaintiffs raise claims for breach of implied contract and for declaratory and injunctive relief. In their claim for breach of implied contract, they allege that they entered an implied contract with defendants when defendants transported them without specifying a price for the service, thereby implicitly agreeing to "a price to be determined by operation of law." ECF No. 60 at 39. Because "these agreements contained an undefined price term they constituted, if anything, an implied contract." *Id.* Plaintiffs apparently contend that defendants breached the implied contract by charging more than the implied reasonable price term. *See id.* at 41 ("As a result of Defendants' breach of their self-imposed undertaking to provide air ambulance transport service to Plaintiffs . . . they have incurred damages in the amount of the overcharges levied by Defendants.").

Thus, they seek a declaration that "the ADA either does not apply to air ambulance carriers or it does not pre-empt the application of state law to Plaintiffs' breach of implied contract claims because such claims fall under the *Wolens* exception." ECF No. 60 at 41. In the alternative, they ask the Court to determine that defendants' bills are unenforceable because the implied contracts lack a defined price term. *Id.* at 42. They ask the Court to determine the proper amount for defendants' services, and they seek equitable restitution for the amount they paid beyond the reasonable charge. *Id.* They also seek injunctive relief precluding defendants from charging and attempting to collect amounts beyond the proper charges. *Id.* at 43. Finally, they suggest that if the ADA preempts their breach of contract claim, then the ADA is unconstitutional as applied since its preemptive effect denies them procedural and substantive due process. *Id.* at 45.

Defendants move to dismiss the *Scarlett* complaint for failure to state a claim on the grounds that the complaint is expressly preempted by the ADA. ECF No. 63 at 2. Defendants point out that "[a]s every court, including the Tenth Circuit, to have considered the question has held, attempts to limit air ambulances' prices to a reasonable amount . . . are preempted by the ADA." *Id.* Defendants, along with the U.S. Government, also defend the ADA's constitutionality.

I agree with defendants that the ADA preempts the *Scarlett* plaintiffs' claims. In reaching this conclusion, I first address plaintiffs' arguments that the ADA should not apply to the air ambulances at issue in this case. Next I discuss their argument that defendants should be estopped from asserting ADA preemption because they have themselves employed state contract law to collect from plaintiffs. ECF No. 64 at 6–7. Third, I address plaintiffs' contention that even if the ADA applies in this case, the *Wolens* exception saves their claims from preemption. Finally, I turn to plaintiffs' argument that if the ADA preempts their claims, the ADA is unconstitutional as applied.

1. Air Ambulances Are Air Carriers Under the ADA.

The *Scarlett* plaintiffs argue that the air ambulances in this case are not subject to ADA preemption. ECF No. 72 at 2. They rely on various definitions of terms in the ADA's preemption clause, which preempts state laws related to "a price, route, or service of an *air carrier* that may provide *air transportation* under this part." 49 U.S.C. § 41713(b)(1) (emphasis added). Plaintiffs allege that defendants are not air carriers and did not engage in air transportation in the majority of the trips at issue in this case because (1) the trips were mostly intrastate, and (2) defendants were not acting as "common carriers." ECF No. 72 at 2. They concede that "every Court and agency considering the arguments in this section have [sic]

rejected these arguments," but they argue that "all of these prior decisions have been wrong," and "new precedent is amply justified." ECF No. 64 at 5. I am not convinced.

In the most recent Tenth Circuit opinion to address the issue, *EagleMed, LLC v. Cox*, 868 F.3d 893, 904 (10th Cir. 2017), the court found that "air ambulances are included within the broad language of the Airline Deregulation Act's preemption statute as it is currently written." Nonetheless, plaintiffs contend that because the Tenth Circuit stated in *EagleMed* that "[n]either Amicus nor Defendants have presented a single textual reason to support the argument that the broad language of the Airline Deregulation Act's express preemption provision should not include air-ambulance services," and that no party had argued that air ambulances were not air carriers, the court was inviting a textual argument on the question. ECF No. 72 at 2 (citing *EagleMed*, 868 F.3d at 904). However, for the reasons explained below, I find that there is no reason to diverge from *EagleMed*'s holding.

a. Interstate vs. Intrastate Transport.

The ADA defines an "air carrier" to mean "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). "Air transportation," in turn, is defined as "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft." *Id.* at § 40102(a)(5). Finally, "interstate air transportation" is defined in relevant part as "the transportation of passengers or property by aircraft as a common carrier for compensation" between a place in one state and another. *Id.* at §40102(a)(25). The *Scarlett* plaintiffs argue that the ADA preemption clause does not apply to intrastate—as opposed to interstate—air ambulance trips. *See* ECF No. 70 at 30–32, 58. Rather, the ADA only preempts state laws related to an air carrier when the air carrier provides "air transportation" on a particular trip. ECF No. 72 at 2, 6. The *Scarlett* plaintiffs thus argue that

"air transportation" as defined in the statute did not occur on the 28 ambulance trips included in their complaint that occurred entirely within a single state, so ADA preemption should not apply. I disagree.

The fact that an air ambulance provides intrastate transport does not prevent ADA preemption of state law as applied to that air carrier or the intrastate trip at issue. The ADA preemption clause is written in broad terms to preempt state regulation of an air carrier that *may* provide interstate air transportation. As such, the air carrier need not *always* or *exclusively* provide interstate air transportation, but need only have the ability or potential to provide air transportation in order for the preemption clause to apply. "Based on the plain language of the statute, an air ambulance need only have the necessary authority to provide interstate, foreign, or mail transportation to fall within the preemption provision, and it need not provide interstate transportation in the certain instance to trigger preemption." *Stout v. Med-Trans Corp.*, No. 17-cv-115-MW-GRJ, (N.D. Fla. May 2, 2018) (ECF No. 88-1). The preemption assessment is thus based on the nature of the air carrier rather than on the nature of the trips themselves.

In this case, defendants make both intrastate and interstate trips, as plaintiffs concede. Moreover, defendants are licensed to provide air transportation. These defendants' authority was recognized in *Bailey v. Rocky Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1378 (S.D. Fla. 2015), in which the court noted with respect to defendants Air Methods Corporation and Rocky Mountain Holdings that the "DOT has expressly recognized AMC d/b/a RMH as an 'air carrier' that is authorized to provide interstate transportation." The *Bailey* court relied on the defendants' "Part 135 certificate and their Part 298 registration" to determine that defendants were "authorized to operate interstate flights as a common carrier for compensation." 136 F. Supp. 3d at 1378.

Similarly in *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 732 (E.D.N.C. 2008), the court relied in part on the plaintiff's "Part 135" certificate issued by the Federal Aviation Administration, "which authorizes plaintiff to operate in 'the contiguous United States and the District of Columbia,'" to find that the plaintiff was "an air carrier for purposes of the ADA." Thus in *Benton*, an air ambulance service that often transported patients intrastate but sometimes transported patients across state lines was deemed an "air carrier" for purposes of section 41713(b)(1). *Id.* The court therefore held that the ADA should preempt the state laws at issue. *Id.* Plaintiffs argue that "the *Benton* court was wrong," because the court failed to relate the definitions of "air carrier" and "interstate transportation" back to the preemption clause. ECF No. 72 at 4. I do not agree. As the *Benton* court's analysis makes clear, the fact that an air carrier *has* provided, or is authorized to provide, interstate trips is sufficient to subject it to the ADA preemption clause.

Plaintiffs' proposed interpretation—that the preemption analysis should occur on a trip – by-trip basis, as opposed to assessing the nature of the air carrier—would have an unreasonable patchwork effect and would undermine predictability. *SeaAir, Inc. v. City of New York*, 250 F.3d 183, 186–87 (2d Cir. 2001) does not support plaintiffs' argument. In that case the Second Circuit found that sightseeing air tours that departed from and returned to New York City, but which passed over New Jersey air space, did not amount to "interstate air transportation." As a result, the tour providers were not "air carriers," and state laws related to them were not preempted. 250 F.3d at 186–87. Unlike the tours in *SeaAir*, plaintiffs admit that defendants are authorized to make, and in fact do make, trips in which they take off from one state and land in another, rather than merely flying over the other state's air space. *Id.*

I am satisfied that defendant Air Methods is an "air carrier that *may* provide air transportation," and that defendant Rocky Mountain owns and controls Air Methods. 49 U.S.C. § 41713; ECF No. 59 at 10. As such, the ADA preempts laws that regulate defendants' prices, routes, or services even when the specific trips at issue are not interstate.

b. Common Carriers.

As noted above, "interstate air transportation" is defined in relevant part as "the transportation of passengers or property by aircraft as a common carrier for compensation" between a place in one state and another. 49 U.S.C. § 40102(a)(25). Plaintiffs argue that an air ambulance is not a common carrier, a term that plaintiffs contend is defined in Black's Law Dictionary as "any carrier required by law to convey passengers . . . without refusal if approved fare or charge is paid in contrast to private or contract carrier." ECF No. 64 at 6 (citing Black's Law Dictionary). I am not convinced.

Though plaintiffs contend that the majority of courts holding that air ambulances are air carriers for the purposes of ADA preemption have not faced the question of whether air ambulances are common carriers, the District Court for the Eastern District of North Carolina in *Benton* held that the plaintiff air ambulance was deemed "a 'common carrier' as required by 49 U.S.C. § 40102(a)(25)." 581 F. Supp. 2d at 732. The court emphasized that "'[t]he duty of a common carrier . . . is to transport for hire whoever employs it," and that the "critical criteria is that the common carrier makes its services available to 'any who may choose to employ him.'" *Id.* (internal citations omitted). I am not persuaded by plaintiffs' attempt to distinguish *Benton* on the ground that the court "did not address the requirement for a common carrier to have a

fixed starting and ending point."  ECF No. 72 at 8 n.6.  That requirement is derived from the

California state definition of a common carrier, which is irrelevant in this context.[1]

Not only have air ambulances in general been found to be common carriers, but also

defendants themselves have been found to be common carriers for purposes of the ADA.  As

discussed above, the District Court for the Southern District of Florida found that defendant Air

Methods doing business as Rocky Mountain Holdings was authorized by its federal Part 135

certificate and its Part 298 registration "to operate interstate flights as a *common carrier* for

compensation."  *Bailey*, 136 F. Supp. 3d at 1378 (emphasis added).  Thus, the same certification

that authorizes air ambulances to take interstate trips also confirms that defendants are authorized

to act as common carriers.  *See also Slavens v. Scenic Aviation, Inc.*, 2000 WL 985933, at *1

(10th Cir. July 18, 2000) (unpublished)(finding the defendant air ambulance and charter

company, Scenic, to be "a common carrier by air involved in interstate commerce" for purposes

of the Railway Labor Act).  The *Slavens* court relied on a previous analysis in which an

emergency air ambulance was found to be a common carrier because "although this air

transportation may be geared to specialized types of service, it is available to any person who

desires to employ [the ambulance service]."  *Id.* (internal citation omitted).  The same analysis

supports the conclusion in this case that defendants are common carriers.

Plaintiffs' reliance on Black's Law Dictionary in this instance is not persuasive.  For one

thing, plaintiffs skip the primary definition, which provides that a common carrier is "[a]

commercial enterprise that holds itself out to the public as offering to transport freight or

---

[1] Plaintiffs cite state court cases for the notion that common carriers must have regular routes "between
fixed termini."  ECF No. 64 at 5.  These cases are irrelevant for purposes of interpreting a federal statute.
*See Alves v. Pub. Util. Comm'n of California*, 260 P.2d 785, 788 (Cal. 1953) (applying California
definitions of "common carrier"); *R.R. Comm'n of Tex. v. Cent. Freight Lines, Inc.*, 434 S.W. 2d 911, 916
(Tex. Ct. App. 1968) (applying Texas definitions of "common carrier").  Therefore, plaintiffs' reliance on
defendants' routes or approved fares is beside the point.  *Id.*

passengers for a fee."  Black's Law Dictionary (10th ed. 2014).  The secondary definition, which plaintiffs rely on, elaborates that a common carrier "is *generally* required by law to transport . . . passengers without refusal if the approved fare or charge is paid."  *Id.* (emphasis added). Defendants satisfy the first definition since they hold themselves out to the public as offering to transport individuals for a price.  The D.C. Circuit Court of Appeals emphasized the importance of the first definition in *CSI Aviation Services, Inc. v. U.S. Dep't of Trans.*, 637 F.3d 408, 415 (D. C. Cir. 2011), noting that "whatever the particular test, some type of holding out to the public is the *sine qua non* of the act of 'provid[ing]' 'transportation of passengers of property by aircraft as a common carrier.'"  *Id.* (quoting 49 U.S.C. §§ 40102(a)(25), 41101 (alteration in original)). As *CSI* indicates, the defining factor of a common carrier is that the air carrier holds itself out to the public, which defendants do.

Plaintiffs argue that defendants should not be deemed common carriers because "they only transport a certain category of customers," referring to "injured persons whose injuries are deemed sufficiently serious by medical personnel . . . to warrant transportation by air ambulance."  ECF No. 72 at 7.  Again, I am not convinced.  Although plaintiffs cite *CSI* for support, the factual circumstances in this case are distinct.  The *CSI* plaintiff was not a common carrier because it "provide[d] charter service to government agencies only, not to all comers." 637 F.3d at 415.  Here, in contrast, defendants have no such predetermined set of users; they will transport any individual who needs their services.  As such, the defendants' services are "held out" to the public, although only those who need the service will seek it (or have it provided on their behalf).  The *Benton* court directly addressed this argument, finding that "[i]t does not matter that the service offered will be used by a limited subset of the population," namely, only

those injured enough to require air ambulance transport.  581 F. Supp. 2d 721, 733.  As a result, defendants in this case, like other air ambulances, are common carriers.

2. Defendants Are Not Judicially Estopped from Asserting ADA Preemption.

Plaintiffs next argue that the defendants should be judicially estopped from asserting that the ADA preempts the Court from enforcing their implied contracts because the defendants have themselves invoked state court jurisdiction to recover under contract theories.  ECF No. 64 at 6–7.  Defendants counter that this Court's authority to enforce contracts is not in question, and that because ADA preemption is a legal rather than a fact question, judicial estoppel is inapplicable.  ECF No. 66 at 2.

The Tenth Circuit has held that "judicial estoppel only applies when the position to be estopped is one of fact, not one of law." *BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1240 (10th Cir. 2015) (citing *U.S. v. Villagrana-Flores*, 467 F.3d 1269, 1279 (10th Cir. 2006)).  The issue before this Court is not whether it has the authority to enforce implied contracts, but instead whether the ADA preempts the application of state common law terms.  Because ADA preemption is a question of law, not of fact, the doctrine of judicial estoppel does not apply to preclude defendants from asserting preemption.  *See Dobbs v. Anthem Blue Cross & Blue Shield*, 475 F.3d 1176, 1177 (10th Cir. 2007) ("Whether federal law preempts . . . state-law claims is a question of law.").

3. The *Wolens* Exception Does Not Save Plaintiffs' Claims from Preemption.

Having decided that defendants are an air carrier subject to the ADA, and that defendants are not estopped from invoking ADA preemption, I next consider the *Scarlett* plaintiffs' argument that their claims are saved from ADA preemption by the *Wolens* exception.  As noted, the Supreme Court held in *Wolens* that the ADA does not preempt state-law-based routine breach

of contract actions because these are based on the parties' "privately ordered obligations" and thus do not amount to the "enact[ment] or enforce[ment] [of] any law, rule, regulation, standard or other provision having the force and effect of law." 513 U.S. at 228–29 (internal citations omitted, alterations in original). However, in breach of contract actions courts are limited "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233.

Plaintiffs argue that when defendants provided transport without specifying a price for the service, they were implicitly agreeing to "a price to be determined by operation of law." ECF No. 60 at 39. Thus, they contend, their request that the Court supply the missing price term in their implied contract is merely a request to vindicate the parties' understanding such that the *Wolens* exception applies. *Id.* at 38; ECF No. 64 at 7. I disagree and conclude that their claim is based on "a state-imposed obligation," not "one that the parties undertook." *Ginsberg*, 134 S.Ct. at 1431.

Broadly speaking, there are three types of contracts: express contracts, which may be oral or written agreements; implied-in-fact contracts, "'founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding;'" and implied-in-law contracts, which are "a 'fiction of law' where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996) (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923)). Each state's contract law may define the terms slightly differently. For example, in Colorado implied-in-law contracts may also be referred to as quasi-contracts or unjust enrichment, since they are equitable remedies to prevent the unjust enrichment of one party at the expense of

another.  *See, e.g.*, *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) ("Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties.").

In this case neither party alleges the existence of an express contract.  Plaintiffs allege the existence of an implied contract.  *See* ECF No. 60 at 39 ("Defendants agreed to transport Plaintiffs for a price to be determined by operation of law . . . . As these agreements contained an undefined price term they constituted, if anything, an implied contract.").  Defendants, for their part, never explain what kind of agreement they think exists, but they "do not dispute Plaintiffs' allegation that they have a contractual obligation to pay for the air carrier services they received."  ECF No. 66 at 3.

Thus, the parties seem to agree that there was some sort of implied contract, but they do not specify whether they are alleging the existence of a contract implied in fact or a contract implied in law.  The distinction matters because a court's enforcement of an implied-in-law contract—which essentially amounts to the court's creating an agreement where none existed— is an equitable solution, and is therefore preempted by the ADA.  *See Brown v. United Airlines, Inc.*, 720 F.3d 60, 70–71 (1st Cir. 2013) (holding that unjust enrichment claims do not fall within the *Wolens* exception because "[v]irtually by definition, unjust enrichment turns on sources external to any agreement between the parties . . . and is predicated on the *lack* of any agreement. A fortiori, the *Wolens* exception does not apply.") (emphasis in original); *see also David v. United Continental Holdings, Inc.*, No. 15-cv-01926-SDW-LDW, 2015 WL 7573204, at *4 (D.N.J. Nov. 24, 2015) ("It is well-settled that claims against airlines for unjust enrichment fall squarely within the ADA's preemption clause.").

The facts in this case do not give rise to an implied-in-fact contract. Plaintiffs have not alleged any meeting of the minds or conduct between the parties by which the Court could infer that they had an agreement before the plaintiffs were transported. *Cf. Hercules*, 516 U.S. at 424. Rather, the parties have alleged what amounts to a contract implied in law. Plaintiffs describe patients as having "no meaningful choice about entering the transaction," explaining that the patients are often "incoherent or unconscious" when a first responder or other emergency personnel determines that transport by helicopter is necessary. ECF No. 60 at 3, 40. Even for those patients who "have some say in whether they or their loved ones are transported by air ambulance, such decisions are made under duress, and with no disclosure of the price that will ultimately be charged." *Id.* at 3. Plaintiffs appear to recognize the equitable nature of the relief they seek when they allege that "[t]he only basis Defendants have to enforce any rights against Plaintiffs is through quasi-contract or *quantum meruit* under state law." *Id.* at 34. Elsewhere, plaintiffs explain that "Defendants voluntarily and intentionally undertook a vague relationship." ECF No. 64 at 9. These facts do not establish a meeting of the minds or conduct by which the parties manifested an understanding that they were contracting.

As a result, plaintiffs' request that the Court enforce their "implied contract" is better understood as a request that the Court invoke state law that implies an obligation to pay for a service in order to achieve equity and avoid injustice. I am not persuaded by plaintiffs' attempt to couch their demand narrowly as merely "[p]roviding a price term," which they aver is "consistent with non-policy-based gap-filling principles commonly undertaken by courts." ECF No. 64 at 3. This framing of the issues obfuscates the real request: to first impose the existence of an agreement, and then to supply and enforce a reasonable price term according to each state's law. The relief far exceeds that permitted by the narrow *Wolens* exception, since it would put the

Court in an active role well beyond merely holding the parties to the privately-agreed terms of a bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233. As the *Brown* court noted, such relief "is predicated on the *lack* of any agreement," and as a result, "the *Wolens* exception does not apply." 720 F.3d at 70–71.

I likewise am not convinced by plaintiffs' argument that because "Defendants have used state law to imply a price term and have sought to enforce that price through collection efforts," this Court is obligated to act consistently. ECF No. 64 at 9. I am not bound by what defendants have allegedly done in state court. Instead, I have an independent obligation to determine the basis for the requested relief in this Court. I find that the only agreement that could plausibly be discerned from these facts is one that the Court would impose as an equitable remedy, and therefore I conclude that any breach of contract claim based on this implied-in-law contract is *per se* preempted by the ADA.

The District Court for the Western District of Oklahoma similarly found breach of contract claims preempted by the ADA under similar factual circumstances. *Schneberger v. Air Evac EMS, Inc.*, 2017 WL 1026012, at *4 (W.D. Okla. March 15, 2017). Without opining on the existence or nature of the contract in its case, the court observed that the plaintiffs' request to have the court supply a reasonable price term was merely "masquerading as [a claim] for breach of contract" when it was in fact a request that the court impose a reasonable price term as determined by state policy. *Id.* The court emphasized that if the plaintiffs had been "simply attempting to enforce a specific term of their contract, their claims could proceed." *Id.* The court concluded that the plaintiffs' request was therefore preempted by the ADA.

Plaintiffs cite *Wagner v. Summit Air Ambulance, LLC*, 2017 WL 4855391 (D. Mont. Oct. 26, 2017). The plaintiffs brought a child to a hospital in Bozeman, Montana, and doctors determined that the child should be transported to Children's Hospital in Denver. The parents authorized the defendant to provide the air ambulance service, but no price was specified. Plaintiffs alleged that a contract existed, and during oral argument plaintiffs indicated that "they expected that Defendants would charge 'reasonable worth' absent specified consideration." *Id.* at *5. The court noted that the Ninth Circuit had recently held that "if the Plaintiff has adequately pleaded breach of contract, the ADA does not preempt the claim." *Id.* at *1 (citing *Hickox-Huffman v. US Airways, Inc.*, 855 F.3d 1067, 1062 (9th Cir. 2017)). Accepting plaintiffs' allegations and representations as true, and finding the question of law presented to be novel such that dismissal would be disfavored, the Court denied defendant's motion to dismiss. *Id.* at **5-6.

I am not persuaded. The facts in *Wagner* were somewhat different, and the theory there was a contract implied in fact. But whether or not the outcome was correct, I remain convinced that the present case depends on the application of state common law, regardless which state's common law is applied, to prevent unjust enrichment. There was no effort to contract around that law. The *Wolens* exception does not fit this situation.

4. Constitutionality of ADA.

Because the ADA preempts the *Scarlett* plaintiffs' claims for breach of contract and injunctive and declaratory relief, I must address their remaining contention that the ADA as applied results in procedural and substantive due process violations. ECF No. 60 at 44–45. The Due Process Clause prevents any person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Am. V.

a. Procedural Due Process.

To determine whether a party's right to procedural due process has been violated, courts first inquire whether the party has been deprived of a protected interest in property or liberty, and if so, then assess whether the government's procedures comport with due process. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 536 U.S. 40, 59 (1999). Plaintiffs contend ADA preemption denies them procedural due process because they have "no procedural mechanism or remedy at law to address a deprivation of their personal property." ECF No. 60 at 44. They argue that "no prior notice of Defendants' pricing is afforded, no opportunity to accept or negotiate such a term is afforded, and ultimately no opportunity to contest Defendants' unilateral price term is afforded." *Id.*

Plaintiffs' procedural due process claim fails because they have not identified a deprivation of a property interest *by the government*. "From the earliest interpretations of this amendment, courts have agreed that the Fifth Amendment protects against actions by the federal government." *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997); *see also Gilmore v. Salt Lake Cmty. Action Program*, 710 F.2d 632, 635 (10th Cir. 1983) ("The Constitution promotes individual liberty by forbidding the government, and the government alone, from engaging in certain activities."). In this case, the deprivation plaintiffs allege was effectuated by defendants, not by the federal government. As a result, no procedural due process claim follows.[2]

b. Substantive Due Process.

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702,

---

[2] To any extent that the ADA could be viewed as a governmental deprivation of a property interest, the ADA provides a procedure by which a patient can challenge the ambulance company's pricing practices, i.e., by filing a complaint of unfair or deceptive practices with the Department of Transportation. *See Stout v. Med-Trans Corp.*, No. 17-cv-115 (N.D. Fla. May 2, 2018) (citing 49 U.S.C. § 41712(a)) (ECF No. 88-1); *see also Schneberger*, 2017 WL 1026012, at *5.

720 (1997).  It "prohibits the government from engaging in conduct which is arbitrary, capricious, or irrational, regardless of the procedures used to implement it."  *In re Marriage of Smith*, 7 P.3d at 1017 (citation omitted).  Under a substantive due process analysis, "the law need not be in every respect logically consistent with its aims to be constitutional.  It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."  *Williamson v. Lee Optical*, 348 U.S. 483, 487–88 (1955).  To satisfy the rational basis test, a statute "need only be rationally related to a legitimate government purpose."  *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Plaintiffs argue that "[a] statute that allows Defendants to charge an unregulated fee following a transport while Plaintiffs are unconscious and cannot negotiate terms . . . then prevents them from mounting any challenge . . . is the definition of arbitrary and irrational." ECF No. 64 at 11.  But I don't see that as the relevant question.  Rather, the relevant question is whether the ADA's preemption of state law in this context is rationally related to the ADA's purpose of increasing competition and efficiency in the air transportation realm.  The Court "will not strike down a law as irrational simply because it may not succeed in bringing about the result it seeks to accomplish."  *Powers v. Harris*, 379 F.3d 1208, 1217 (10th Cir. 2004) (citations omitted).

Economic legislation, such as the ADA, "comes to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."  *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976); *see also Duke Power Co.*, 438 U.S. at 82–84 (a regulation is economic when Congress' purpose in enacting it was to reduce regulatory burdens to the development of a particular market).  "[I]t is difficult to exaggerate the burden that a party must

overcome to demonstrate that economic legislation fails rational basis review." *KT&G Corp. v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1142 (10th Cir. 2008) (citation omitted).

The *Scarlett* plaintiffs acknowledge the ADA's success in achieving its goals with regard to commercial airlines, where its effect has been to dramatically decrease prices. ECF No. 64 at 10. In contrast, plaintiffs point to the "skyrocketing and outrageous charges" in the context of air ambulances. *Id.* at 11. The Tenth Circuit recently canvassed many of these same arguments in the *EagleMed* case. Though not raised in the context of a due process challenge, the court in *EagleMed* considered "several policy-related reasons why we should conclude that Congress did not intend to prevent state workers' compensation programs from regulating air-ambulance fees." 868 F.3d at 902. The court noted the severe distortion in the market for air ambulances, since passengers generally do not choose to take the flights, do not pay an agreed-to rate in advance, and "do not have prices that are determined in a free market of individual consumer choice." *Id.* at 903. The court also observed the "persuasive force" behind the argument "that federal preemption of state regulations in this field is not serving the congressional purpose of 'furthering efficiency, innovation, and low prices' that was a motivating force" behind the ADA. *Id.* (quoting *Morales*, 504 U.S. at 378). Nonetheless, the court focused on the plain language of the statute's express preemption clause to determine that Congress intended preemption of state laws governing air ambulances.

Defendants and the U.S. Government dispute plaintiffs' substantive due process argument, contending that plaintiffs cannot overcome the presumption of constitutionality to which economic legislation is entitled by demonstrating that Congress acted in an arbitrary and irrational way when enacting the ADA. ECF No. 63 at 11. In particular, they argue that it was not arbitrary or irrational to extend the ADA's preemption clause to air ambulances, since doing

so could serve Congress' goals behind enacting the ADA. *Id.* For example, they note that Congress could have concluded that eliminating a patchwork of state regulation would encourage the expansion of air ambulance providers into new markets.

Although plaintiffs highlight unfortunate side effects of the ADA's preemption provision in this context, these effects do not render the ADA arbitrary and irrational as it applies to air ambulances. Rather, I conclude that Congress' reasons for applying the preemption provision to this field withstand rational basis review, since the preemption of state regulation could conceivably reduce prices and improve access to air ambulances. While the ADA may not be achieving its goals in this realm, that fact does not render the statute irrational. *See Powers*, 379 F.3d at 1217. To the extent the statute needs adjustments to better achieve its goals, such a task falls to Congress rather than to the courts. Moreover, to the extent plaintiffs' substantive due process claim encapsulates their procedural arguments, as noted above, there is "no case requiring Congress to replace all claims previously available under state law whenever a federal statute preempts them." *Conservation Force v. Delta Air Lines, Inc.*, 19 F. Supp. 3d 606, 614 (N.D. Tex. 2016). The fact that plaintiffs are left without a remedy from the courts in this situation does not render the ADA arbitrary and irrational in violation of substantive due process.

Because plaintiffs have not overcome the presumption of constitutionality to which economic regulation like the ADA is owed by demonstrating that the ADA is arbitrary or irrational, their substantive due process claims must fail. The motion to dismiss the *Scarlett* plaintiffs' complaint is therefore GRANTED, and the complaint is dismissed with prejudice.

## C. Motion to Dismiss the *Cowen* Complaint [ECF No. 62].

The *Cowen* plaintiffs' complaint raises three counts: declaratory relief (Count I); breach of contract under federal common law (Count II); and equitable restitution for the funds defendants received from plaintiffs beyond the reasonable value of those services (Count III). ECF No. 59 at 26.

Defendants move to dismiss each of the *Cowen* plaintiffs' claims. They contend that Count I, "a 28-paragraph kitchen-sink request for declaratory relief," should be dismissed based on its incomprehensibility. ECF No. 62 at 2. Count II should be dismissed because (1) there is no general federal common law of contracts; (2) Congress did not intend for the ADA to provide a source of federal common law; and (3) a federal rule of decision is not "'necessary to protect uniquely federal interests'" in this case. *Id.* at 5–6 (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)). Finally, defendants seek dismissal of Count III both because federal common law does not supply a reasonable price term, and because plaintiffs have failed to plead the elements of equitable restitution. *Id.* at 10.

While the declarations sought in Count I might be somewhat unclear, the nub of their argument ultimately is that "given that the Defendants claim that Congress has displaced state law through ADA pre-emption, a federal rule of decision, i.e., federal common law is applicable." ECF No. 65 at 4. So I will move straightaway to Counts II and III. The *Cowen* plaintiffs advocate the imposition of federal common law "to determine whether the parties had a contract, its terms, and the respective rights of the parties." ECF No. 59 at 9. Specifically, they ask the Court to apply the Restatement of Contracts (Second) articulation of the respective rights of the parties "where a contract is silent as to the price owned [sic] for services rendered, and reasonable price is to be determined." *Id.* I find their arguments to be interesting and creative, but I do not agree with them.

First, "[t]here is no federal general common law." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Courts may only formulate federal common law in two limited instances: "those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' . . . and those in which Congress has given the courts the power to develop substantive law." *Tex. Indus., Inc.*, 451 U.S. at 640 (internal citations omitted). "Absent some congressional authorization to

formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes . . . and admiralty cases." *Id.* at 641. None of these grounds is present here.

Plaintiffs explain in their response to defendants' motion to dismiss that their "entreaty to federal common law only arises because Defendants' [sic] claim pre-emption under the ADA of 'a field which the states have traditionally occupied.'" ECF No. 65 at 4 (quoting *Boyle v. United Techs.*, 487 U.S. 500, 507 (1988)). Federal common law applies, they submit, "to situations where there is 'significant conflict between some federal policy or interest and the use of state law.'" *Id.* at 15 (quoting *O'Melveny & Myers v. F.D.I.C.*, 114 S. Ct. 2048, 2055 (1994)). But these invocations of "field preemption" to impose federal common law are inapt in this context. Courts use field preemption analysis to determine whether a federal law impliedly preempts state law. However, the ADA contains an express preemption provision, so there is no need to conduct such an analysis in this case. Indeed, the fact that states "traditionally occupied" the field of air carrier regulation is the reason for ADA preemption to begin with. It would defeat the ADA's deregulatory purpose to find that the existence of a "gap in the law" as a result of express preemption is reason to create federal common law.

For the same reason that a court's reliance on state common law principles to determine a reasonable price term would enhance the parties' bargain impermissibly, so too would the court's use of federal common law. The Supreme Court observed as much in *Wolens*, in which it noted that Congress has not given the federal courts the power to develop substantive law with respect to contract disputes surrounding airline rates, routes, or services. *Wolens*, 513 U.S. at 232 ("Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to

airline rates, routes or services. The ADA contains no hint of such a role for the federal courts."). This holding has been confirmed by other courts. *See, e.g.*, *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1251 (6th Cir. 1996) ("[T]he Supreme Court has expressly rejected the possibility that the ADA leaves room for a federal common law cause of action against air carriers, at least in regard to breach of contract claims.") (citing *Wolens*, 115 S. Ct. at 825). Plaintiffs provide no reason for this Court to depart from precedent indicating federal common law is inapplicable here.

Plaintiffs' fundamental argument appears to be that if defendants "seek to pre-empt all breach of contract claims dependent upon state common law principles . . . . then, of course, the ADA *must* channel 'the business of resolving, pursuant to judicially fashioned common law, the range of contract claims relating to airlines rates, routes and services,' as all other means of resolving them are foreclosed." ECF No. 65 at 15 (quoting *Wolens*, 513 U.S. at 232) (emphasis in original). Though I can easily sympathize with plaintiffs' frustration, I disagree with their framing of the issue. Defendants do not seek to preempt *all* breach of contract claims that would depend upon state common law principles, but only those claims that have the Court create a bargain where the parties had none. In this case, a reasonable price term provided by the Court would certainly do more than just afford relief according to the terms of an agreement. The fact that the parties have no remaining means of resolving their disputes is the result of ADA preemption. It is not a reason for a Court to impose federal common law. Instead, the "gap in the law" created by preemption is a problem for Congress, not the judiciary, to resolve.

## ORDER

For the reasons stated, defendants' motion to dismiss the *Cowen* plaintiffs' complaint [ECF No. 62] is GRANTED; and defendants' motion to dismiss the *Scarlett* plaintiffs' complaint

[ECF No. 63] is GRANTED.  Because plaintiffs' claims are preempted by the ADA as a matter of law, both complaints are dismissed with prejudice.

DATED this 22nd day of May, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge