IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02723-RBJ
*Consolidated Cases: 17-cv-00485; 17-cv-00502; 17-cv-00509; 17-cv-00667; 17-cv-791; 19-cv-01771, and 19-cv-01951*

JEREMY LEE SCARLETT, on behalf of himself and all others similarly situated,

     Plaintiff,

v.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

     Defendants.

---

# ORDER

---

This is a consolidated multi-district litigation case before the Court on several motions by defendants Air Methods Corporation and Rocky Mountain Holdings, LLC ("defendants"). Defendants move to dismiss plaintiff Jonathan Armato's Class Action Complaint, Case No. 1:19-cv-01771-RBJ, ECF No. 1, ("Armato complaint,") as well as plaintiffs Richard DeQuasie, et al.'s Amended Class Action Complaint, Case No. 1:16-cv-02723-RBJ, ECF No. 138 ("DeQuasie complaint"). ECF Nos. 142; 143. Defendants also move to strike the class allegations from the Armato complaint, the Deqausie complaint, and plaintiffs Randal Cowen, et al.'s Amended Class Action Complaint, Case No. 1:16-cv-02723-RBJ, ECF No. 59, ("Cowen complaint").[1] ECF No. 144. For the reasons stated below, the motions to dismiss are granted in part and denied in part, and the motion to strike class allegations is granted in part and denied in part.

---

[1] Unless otherwise noted ECF docket numbers refer to Case No. 16-cv-02723-RBJ.

# BACKGROUND

A. **Factual Background**

These class action complaints are all brought on behalf of patients, their legal guardians, or the estates of deceased patients, who were charged allegedly exorbitant fees by defendants for medical transport by helicopter.  ECF No. 59; ECF No. 138; Case No. 1-19-cv-01771-RBJ.  ECF No. 1.  Defendant Air Methods Corporation ("Air Methods") is an air ambulance company with a principle place of business in Englewood, Colorado, while defendant Rocky Mountain Holdings, LLC, is a holding company that owns Air Methods and directs collection efforts jointly with Air Methods.  ECF No. 59 at 10.  Though the various groups of plaintiffs have slightly different legal theories, their claims all stem from the allegedly unreasonable amounts defendants charge to provide air ambulance transportation despite there being no agreement as to price.

Plaintiffs allege that after providing medical air transport, defendants typically invoice patients upwards of $40,000 for baseline air ambulance transportation services, excluding any medical services provided en route.  *Id.* at 2.  In many cases, after defendants send patients an invoice, they asked them to sign an "assignment of benefits" ("AOB") prepared by defendants, which authorizes direct payment of patient's insurance benefits to defendants and assigns them the patients' insurance coverage rights.  *Id.* at 3.  After patients' insurance pay what they deem to be the reasonable value of the services, defendants typically demand that patients pay the remainder of the charged amount.  *Id.* at 3–4.  Plaintiffs claim defendants have initiated collection efforts against them, and in some cases defendants have filed state court breach of contract claims and other suits to collect their charges from plaintiffs.  *Id.* at 8.

### B.  Procedural Background

This action is now comprised of eight separate complaints.  Only three are at issue for the purposes of this motion, and I contain my discussion to those three.  The Armato complaint asserts claims for declaratory and injunctive relief as well as equitable restitution.  Case No. 1-19-cv-01771-RBJ, ECF No. 1.  The DeQuasie complaint asserts only a claim for declaratory and injunctive relief.  ECF No. 138.  Although the Armato and DeQuasie complaints allege similar facts, they bring slightly different claims for relief.  Both the Armato and DeQuasie plaintiffs argue that no contract exists between plaintiffs and defendants.  *See* ECF No. 138, Case No. 1-19-cv-01771-RBJ, ECF No. 1.  The DeQuasie plaintiffs seek a declaratory judgment that no contract exists, as well as prospective relief pursuant to that judgment.  ECF No. 138.  Armato, who brings a class action but is the only named plaintiff, asks for equitable restitution of payments made to defendants in addition to declaratory relief.  Case No. 1-19-cv-01771-RBJ, ECF No. 1.

Finally, the Cowen plaintiffs raised claims for declaratory and injunctive relief, breach of contract, and equitable restitution.  ECF No. 59 at 19–26.  Defendants moved to dismiss that complaint in its entirety, ECF No. 62, and I granted their motion on May 22, 2018.  ECF No. 90.  The Cowen plaintiffs appealed the dismissal to the Tenth Circuit, which affirmed in part and reversed in part.  *See Scarlett v. Air Methods Corp.*, 922 F.3d 1053 (10th Cir. 2019).  The Tenth Circuit affirmed this Court's dismissal of the Cowen plaintiffs' implied contract and unjust enrichment claim.  *Id.* at 1064–1068.  The Tenth Circuit then reversed this Court's dismissal of the *Cowen* plaintiffs' declaratory judgment claim regarding the existence of enforceable express or implied-in-fact contracts.  *Id.* at 1068.

Defendants have moved to dismiss the Armato and Deqausie complaints, ECF Nos. 142, 143, and to strike the class allegations from these complaints as well as the Cowen complaint, ECF No. 144.

## MOTIONS TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss the complaints must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

A court may dismiss a claim "under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic*, Inc., 784 F.3d 1335, 1341 (10th Cir. 2015).

Defendants' motions present the same arguments against the Deqausie and Armato plaintiffs' declaratory judgment claims, ECF No. 142 at 5; ECF No. 143 at 4–5, so I address them together.  I then consider defendants' argument on Armato's equitable restitution claim. ECF No. 142 at 11.

## A. **Declaratory Judgment Claims**

Regarding plaintiffs' requested declaratory judgment, defendants argue 1) that the ADA does not create a private right of action, and 2) that the ADA does not prevent defendants from receiving payments for services. *Id*. at 5.

### 1.   Private Right of Action

According to defendants, plaintiffs' request for declaratory judgment that no contract exists between themselves and defendants "attempts to create an affirmative, private right of action under the ADA." ECF No. 142 at 5. I disagree.

As the Tenth Circuit stated in *Scarlett*, "'the ADA pre-emption provision' does not bar 'breach-of-contract claims' against airlines." *Scarlett*, 922 F.3d at 1061 (quoting *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014)). A district court can therefore "enforce contractual 'terms and conditions . . . offer[ed] by Defendants] and . . . accept[ed]' by Plaintiffs without running afoul of the ADA's pre-emption provision." *Id.* at 1067 (quoting *Ginsberg*, 572 U.S. at 281). "To enforce a contract, a court must first confirm that a contract exists. Defendants have offered no reason why a court that can enforce a contract would be prohibited from 'declar[ing] the rights and other legal relations" arising from a contractual relationship, or lack thereof.'" *Id.* (quoting Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, noting that the DJA does not extend jurisdiction but rather only enlarges the range of remedies available). The plaintiffs' declaratory judgment claim does not, as defendants would have it, attempt to create a cause of action under the ADA. Rather it arises from this Court's power to resolve contract disputes between airlines and customers, which the Tenth Circuit has held are not pre-empted under the ADA.

Defendants point out that the plaintiffs also request injunctive relief in their declaratory judgment claim, pursuant to § 2202 of the DJA.  ECF No. 142 at 5–6.  Specifically, plaintiffs request that if this Court finds no contract exists, the Court also issue a prospective order requiring defendants to cease collection attempts and cease charging transported patients without disclosure of prices or an express agreement.  Case No. 1:19-cv-01771, ECF No. 1 at 14; ECF No. 138 at 19.  They also seek disgorgement of sums collected by defendants from both third-party payers and members of the proposed class.  *Id*.  Though it does not appear to me that this claim attempts to create a private right of action, I agree with defendants that it requires examination under the ADA pre-emption standard articulated in *Scarlett*.

*Scarlett* provides somewhat conflicting guidance on this issue.  As discussed above, the *Scarlett* court found that declaratory relief under the DJA was not preempted by the ADA because the DJA did not expand jurisdiction of this court; rather, it only enlarged the remedies available to it, including available remedies in contract disputes between airlines and customers.  *Scarlett*, 922 F.3d at 1067.  Believing the Tenth Circuit embraces the whole of the DJA, plaintiffs correctly note that § 2202 of the DJA authorizes a court to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  28 U.S.C. § 2202.

In *Scarlett*, the Tenth Circuit dismissed plaintiffs' claims for unjust enrichment because the doctrine had nothing to do with the parties' mutual assent or lack thereof.  *Scarlett*, 922 F.3d at 1068.  Because plaintiffs here seek prospective relief under DJA § 2202, any relief would be based on a declaratory judgment that the parties lacked mutual assent.  Thus, the prospective relief appears to "arise from the contractual relationship or lack thereof."  *Id.*

However, the *Scarlett* court also held that "[t]he ADA's pre-emption provision prohibits courts from imposing an equitable remedy *in the absence of a contract* because the remedy would reflect the court's policy judgments, not the parties' mutual assent." *Id.* (emphasis added). This appears to squarely fit these circumstances.  The plaintiffs ask me to impose an equitable remedy—a prospective order on collection attempts, disclosure of prices, disgorgement—in the absence of a contract.  Because I find that the Tenth Circuit's binding language cannot be avoided here, under *Scarlett* the plaintiffs' requested non-declaratory prospective relief under DJA §2202 is pre-empted by the ADA.  In other words, I find that the Tenth Circuit has narrowly defined this Court's remaining role in this case: under *Scarlett*, I may declare whether or not a contract exists.  If I conclude that an express or implied-in-fact contract does exist, I may enforce its terms.  If I conclude that a contract does not exist, I cannot, without violating the ADA, impose any further remedy.

Plaintiffs' declaratory judgment claims request injunctive and equitable relief in the absence of a contract.  Thus, this conclusion applies to Armato's request for an order requiring defendants to cease collection attempts on bills for which no agreement exists, for disgorgement of all sums collected for such bills from third party payers and the proposed class, and for an injunction requiring defendants to cease and desist their practices.  Case No. 1:19-cv-01771, ECF No 1 at 13–14.  It also applies to the DeQuasie plaintiffs' request for an order requiring defendants to "cease charging for the transporting of patients without an express agreement or full disclosure as to the rates for mileage and helicopter rotor base;" and "cease Defendants' attempts to collect outstanding bills for which no agreement as to price exists," as well as their requests for disgorgement and permanent injunction.  ECF No. 138 at 19. [2]

---

[2] Even if the Court could do more after finding that there was no contract, the remedy plaintiffs request – essentially, that defendants would receive no compensation for their services – would not be something this Court would

2.  <u>Payment for Services</u>

Defendants claim that the plaintiffs' declaratory judgment theory "is contrary to the way in which Congress intended [the ADA] and its surrounding regulatory scheme to affect business, consumers, and the law."  ECF No. 142 at 8.  Defendants assert that plaintiffs' theory amounts to an argument that the ADA preempts air carriers from ever receiving payment for their services. ECF No. 142 at 7.  Plaintiffs disagree, claiming they only argue that defendants should not receive payment when no contract exists between the parties.  ECF No. 151 at 6; ECF No. 152 at 6.  According to plaintiffs, defendants are free to receive payments from passengers with whom they have valid contracts.  *Id.*

As I have dismissed the non-declaratory prospective relief requested in plaintiffs' declaratory judgment claim, all that remains is plaintiffs' request for an order declaring that no contract exists between the parties.  As such I consider only whether defendants' argument applies to these claims.

In *Scarlett* the Tenth Circuit foreclosed the argument that the ADA preempts declaratory judgment on the existence of a contract.  The *Scarlett* court held that a district court could determine whether a contract existed "without running afoul of the ADA's pre-emption provision."  *Scarlett*, 922 F.3d at 1067 (citing *Ginsberg*, 572 U.S. at 281).  Thus, contrary to defendants' argument, declaratory judgment claims about the existence of a contract neither prevent defendants from collecting for their services nor improperly regulate the airline industry.

Plaintiffs may continue to pursue a declaratory judgment, but plaintiffs' requests for non-declaratory and injunctive relief under DJA § 2202 are dismissed.

---

endorse.  The defendants' position, apparently that they may charge and collect amounts exceeding a reasonable price, is equally inequitable.  Perhaps at some point the parties will realize that they cannot achieve their polar positions in the courts and will work out a reasonable resolution.

**B.  Equitable Restitution**

Defendants argue that Armato's claim for equitable restitution is preempted by the ADA. ECF No. 142 at 11.  Though Armato's brief merges the argument for disgorgement with the argument for equitable restitution, ECF No. 151 at 11, the complaint separates the two claims, bringing the request for disgorgement under "further relief" pursuant to § 2022 of the DJA, and the request for equitable restitution presumably under common law principles.  Case No. 1:19-cv-01771, ECF No. 1 at 11–15.  Because I have already dismissed plaintiffs' requests for injunctive or equitable relief under the DJA as preempted by the ADA, I separately address preemption of the equitable restitution claim.

Defendants' argument on this point aside, the Tenth Circuit's ruling on appeal made clear this claim must be dismissed.  The Tenth Circuit held that though the "ADA's pre-emption provision does not bar breach of contract claims against airlines," *Scarlett*, 922 F.3d at 1061 (quoting *Ginsberg*, 572 U.S. at 280) (internal quotations omitted), it does bar non-contract-based equitable claims.  *Id.* at 1068 (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232 (1995)).

In reviewing this Court's dismissal of the Cowen plaintiffs' unjust enrichment claim, the Tenth Circuit found that "unjust enrichment is an equitable doctrine that only applies if there is no contract."  *Id.*  Affirming the dismissal, the Tenth Circuit concluded that "[t]he ADA's pre-emption provision prohibits courts from imposing an equitable remedy in the absence of a contract, because the remedy would reflect the court's policy judgments, not the parties' mutual assent."  *Id.*  (citing *Wolens*, 513 U.S. at 232–33)

The same logic applies to Armato's equitable restitution claim.  Like the unjust enrichment claim in *Scarlett*, the equitable restitution claim "only applies if there is no contract" between plaintiffs and defendants.  Case No. 1:19-cv-01771, ECF No. 1 at 14–16.  Equitable

restitution is a closely related equitable remedy that "would reflect the court's policy judgment." *Scarlett*, 922 F.3d at 1068.  Under the Tenth Circuit's holding in *Scarlett* this claim is pre-empted by the ADA.

Defendants' motion is granted as to the DeQuasie and Armato plaintiffs' claims for non-declaratory and injunctive relief pursuant to DJA § 2202, and as to Armato's claim for equitable restitution.  The motion is denied as to the plaintiffs' declaratory judgment claims.

## MOTION TO STRIKE CLASS ALLEGATIONS

### A.  <u>Judicial Estoppel</u>

Preliminarily, I must address plaintiffs' argument that defendants should be judicially estopped from attempting to strike plaintiffs' class allegations.  ECF No. 150 at 3.

"[J]udicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (internal quotations omitted).  "[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981)) (internal quotations omitted).  The Supreme Court has identified three relevant factors for determining when to apply judicial estoppel:

> First, courts ask whether a party's later position is clearly inconsistent with its former position.  Second, courts ask whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  And third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*BancInsure, Inc. v. F.D.I.C.*, 796 F.3d 1226, 1240 (10th Cir. 2015) (quoting *New Hampshire*, 532 U.S. at 750) (internal quotations omitted).

According to plaintiffs, "[s]ince their first pleading in this case, the Defendants have asserted that no contracts existed between the parties." ECF No. 150 at 3.  Now, plaintiffs claim, defendants "take the contradictory position that there *are contracts* between it and the transported patients, which contractual relationship requires individualized review sufficient to defeat class treatment." *Id.*  Plaintiffs argue that these positions are clearly contradictory, and that defendant should be judicially estopped from now arguing that contracts exist between the parties.

Even assuming that judicial estoppel would apply if defendants made such arguments, I cannot conclude this is the case here.  Plaintiffs' brief shows the flaw in this argument.  Their overall argument is that "since their first pleading," defendants claimed no contract existed between the parties, but that they now argue that contracts do exist.  ECF No. 150 at 3.  As plaintiffs noted, however, almost all parties understood defendants to argue that contracts did exist, at least until they argued before the Tenth Circuit.  ECF No. 150 at 5.  The Tenth Circuit commented on this fact and noted that defendants could not raise their no-contract argument for the first time at oral argument:

> Defendants argued in the district court that Plaintiffs have 'a contractual obligation to pay for the air carrier services they received' . . . .  The district court understood Defendants to argue that Plaintiffs have a contractual obligation to pay . . . .  The Scarlett Plaintiffs similarly understood 'Defendants [to] have repeatedly invoked . . .  state court jurisdiction to determine their right to recover [from Plaintiffs] under contract theories' . . . .  But at oral argument, Defendants argued that Plaintiffs' obligation to pay arises under quantum meruit or a contract implied-in-law, which are equitable theories . . . .  We will not base our analysis on an argument first made at oral argument.

*Scarlett*, 922 F.3d at 1063.  Thus, I cannot agree with plaintiffs that defendants previously argued that no contracts exist and now take a clearly inconsistent position, nor that they succeeded in persuading a court to accept that position.  *See* ECF No. 90 (my order on defendants' first motion to dismiss noting "[d]efendants, for their part, never explain what kind of agreement they think exists").

### B. <u>Defendants' Arguments</u>

Although the Tenth Circuit has not articulated a standard for evaluating motions to strike class allegations, courts in this district have held such motions to a high standard of proof. *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13–cv–03258–PAB–KMT, 2015 WL 1403814, at *4 (D. Colo. March 23, 2015).  A motion to strike is a "drastic remedy" and one that is generally "disfavored by the courts."  *Friedman v. Dollar Thrifty Automotive Group, Inc.*, No. 12-cv-02432-WYD-KMT, 2013 WL 5448078, at *2 (D. Colo. September 13, 2013) (quoting *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 3733023, at *1 (D. Colo. September 16, 2010)).  "If there is any doubt as to whether to strike a matter, courts should deny the motion." *Id.* (quoting *Coder v. Am. Bankers Ins. Co. of Fla.*, No. 12-2231-EFM, 2013 WL 2151583, at *3 (D. Kan. May 16, 2013)).

Motions to strike class allegations are particularly disfavored because such a motion "requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (citing *Francis*, 2010 WL 3733023 at *1) (internal quotations omitted).

Courts in this district have generally found that a motion to strike class allegations prior to discovery is only warranted where defendants "are able to show conclusively that plaintiffs

will be unable to establish fact that would make class treatment appropriate." *Wornicki*, 2015 WL 1403814, at *4; *see also Friedman*, 2013 WL 5448078, at *2 (holding that motion to strike should only granted if "it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove") (quoting *Francis*, 2010 WL 3733023, at *1) (internal quotations omitted).

Because the burden for a motion of this type is very high for the movant, I cannot and will not consider arguments not expressly raised by defendants.  Unlike in a motion for class certification in which a district court has discretion to make a determination, *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 793 (10 Cir. 1970), I have little discretion here and must hold defendants to their burden.

Defendants argue that plaintiffs cannot meet the requirements of Federal Rule of Civil Procedure Rule 23(a), (b)(2), or (b)(3), and therefore the class allegations should be struck.  ECF No. 144.  I address each of the defendants' arguments in turn.

### 1.  Rule 23(a)

Rule 23(a) requires plaintiffs to satisfy four requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Defendants argue that plaintiffs cannot adequately represent the class, nor satisfy the commonality and typicality requirements.  ECF No. 144.

### a.  Fairly and Adequately Represent the Class

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a).  "The Tenth Circuit has held that adequacy of

representation depends on resolution of two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Kurlander v. Kroenke Arena Co.*, LLC, 276 F. Supp. 3d 1077, 1087 (D. Colo. 2017) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)) (internal quotations omitted). "Plaintiff bears the initial burden of demonstrating adequacy, after which the burden shifts to the defendant; [a]bsent evidence to the contrary, a presumption of adequate representation is invoked."  *Id.* (quoting *Decoteau v. Raemisch*, 304 F.R.D. 683, 689 (D. Colo. 2014)) (internal quotations omitted).

First, defendants argue that several of the named plaintiffs do not adequately represent the class articulated in their various complaints.  ECF No. 144 at 5.  Defendants point out that the Cowen complaint specifically excludes from the class "any persons who had an express contract with the Defendants to pay the prices charged by the Defendants[.]"  *Id.*  They argue that the named Cowen plaintiffs do not fall into this class because "the bulk of them, or their next of kin, did execute an AOB that contained a financial responsibility provision to pay [defendants'] charges."  *Id.* at 6.  In making this argument defendants assume that the AOB is a valid express contract obligating plaintiffs to pay for defendants' services.  In doing so, defendants ignore that the central issue in plaintiffs' complaint is whether a contract existed between the parties. Indeed, plaintiffs' complaint contests whether the AOB constitutes a contract for payment. *See, e.g.*, ECF No. 59 at 3.  Defendants cannot meet their burden of showing that class certification is impossible by citing contested legal and factual issues, the resolution of which may fall in plaintiffs' favor.

Defendants argue that the same issue applies to the DeQuasie and Armato named plaintiffs, though they admit that those complaints do not include the same class restriction. *See Id.* at 3 n.2.  Because these complaints do not limit the class in the same manner, defendants' argument does not go to the issue of whether the named DeQuasie and Armato plaintiffs can fairly and adequately represent the class.  Instead it goes to the merits of their declaratory judgment claim that no contract exists, and therefore cannot be resolved by this motion.

Next, defendants argue that the named plaintiffs don't adequately represent the class because they have conflicts of interest "with class members who are commercial or government payers."  ECF No. 144 at 6.  Because plaintiffs' complaints define the class to include "all persons billed by defendants, or who paid a bill from Defendants, for air medical transport," defendants understand the class to include insurance carriers who paid portions of plaintiffs' charges.  ECF No. 144 at 7.  According to defendants, "[i]ndividuals transported, such as named plaintiffs, almost certainly have a conflict of interest in representing their insurance carriers who only paid a portion of Defendants' charges, leading Defendants to seek the rest of the payment from the individuals." *Id.*

Defendants, however, cease their argument there.  Though I agree with defendants that a conflict of interest *could* arise between the named plaintiffs and the subset of class members that includes insurance carriers, this does not indicate that it will necessarily arise or is currently present.  From my point of view, at the moment, all class members' interests appear aligned in determining whether a contract exists between plaintiffs and defendants.

Additionally, even if the proposed class was overbroad in its inclusion of insurance carriers, this defect does not necessarily warrant striking the class allegations altogether if they could sufficiently support a narrower proposed class. *See Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (noting that defining a class is "more of an art than a science" and problems regarding over-inclusive class definitions "can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis"). Because defendants' theory of the case and any resultant conflicts remain vague, and because the proposed class could easily be narrowed, I cannot find that a conflict exists that would make class certification impossible.

    b. <u>Commonality</u>

Rule 23(a)(2) requires "only a single question of law or fact common to the entire class." However, "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)). "The class's 'common contention must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Colorado Cross–Disability Coalition v. Abercrombie & Fitch*, 765 F.3d 1205, 1213 (10th Cir. 2014) (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013) (internal quotations omitted).

Defendants argue that the plaintiffs cannot satisfy the commonality requirement because the claims of each class member—though dependent on the common question of the existence of a contract—are governed by unique and specific factual and legal questions including:

- Which state's law of contract formation controls where a patient was transported between two states?

- Was the patient conscious at the time transport was initiated such that he could express mutual assent to pay Defendants' charges?

- What, if any, were the conduct and statements of each of the parties prior to transport?

- What, if any, were the conduct and statements of each of the parties after transport?

ECF No. 144 at 8–9.  Defendants' list goes on.

For their part, Plaintiffs do not state what common questions of law or fact will satisfy the commonality requirement.  Instead, plaintiffs respond that defendants' motion is premature, and that plaintiffs should not be required to show commonality until "defendants answer the question of why they are entitled to payment."  ECF No. 150 at 10.  In essence, plaintiffs argue that commonality cannot be determined until defendants articulate their defense against plaintiffs' theory that there is no contract.

It is plaintiffs, not defendants, who bring a claim for declaratory judgment, asking this court to find that no contract exists between all class members and defendants.  It is therefore plaintiffs, and not defendants, who must ultimately show that their claims contain common questions of law or fact that are resolvable on a class-wide basis.  Plaintiffs are correct that, as the Tenth Circuit noted, defendants have inconsistently articulated their theory of the contractual relationship between parties.  But this does not free plaintiffs of their obligation under Rule 23(a) to show that common questions of law or fact are resolvable for *their* claims, regardless of defendants' defenses.  Defendants' failure to articulate their contract theory does not prevent plaintiffs from articulating those common questions of law or fact they believe exist justifying their class action.

However, despite plaintiffs' unsatisfactory response, because the burden on a motion to strike class certification is heavy on the movant and because defendants have not articulated their

reasoning as to why plaintiffs' declaratory judgment claims should fail, I do not find at this time that it would be impossible for plaintiffs to satisfy the commonality requirement. Instead, as in *Wornicki*, defendants "introduce only unsupported argument as to their possible defenses." 2015 WL 1403814 at *6. "This is not sufficient to find that plaintiffs will be unable to satisfy their burden to show a question of law or fact common to the entire class at this early stage of the litigation." *Id.* Though defendants list a great many questions that might be relevant, without knowing what defense they plan to bring, those questions by themselves do not make clear that no common questions will remain that could be resolved on a class-wide basis. And therefore, plaintiffs' possible allegations that satisfy the commonality requirement remain wide open. Plaintiffs could allege that there exists a common question of law as to the contractual significance of the AOB, for example, or the fact that patients were experiencing a medical emergency when they encountered defendants. I will not strike plaintiffs' class allegations on this basis.

### c.   Typicality

Typicality ensures "that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected." *In Re Intelcom Group, Inc. v. Securities Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996). "The rationale behind the requirement that the class representative's claims be typical of the class claims is recognition that a plaintiff with claims typical of the class will, in pursuing and defending his own self interest in the litigation, be concomitantly advancing or defending the interests of the class." *Kurlander*, 276 F. Supp. 3d at 1087 (quoting *Dubin v. Miller*, 132 F.R.D. 269, 274 (D. Colo. 1990)).

Defendants argue that the named plaintiffs fail to meet the typicality requirement because "[e]ach class members' 'individual circumstances' and interactions with Defendants bear on

their contract formation claims." ECF No. 144 at 10. However, defendants ignore the large majority of case law in which courts have found that, though factual differences exist, typicality is satisfied "where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG ex rel. Stricklin*, 594 F.3d at 1199. Courts also find typicality despite different individual circumstances when "the same legal theory . . . underlies class members' corresponding claims." *Id.*; *see also Colorado Cross Disability Coal.*, 765 F.3d at 1216 (quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.").

The harm and threat of harm suffered by the named plaintiffs as a result of defendants' attempts to collect exorbitant fees following air transport is typical of the harm and threat of harm suffered by other members of the class. Additionally, named plaintiffs allege that they have no contract with defendants, "the same legal theory that underlies class members' corresponding claims." *DG ex rel. Stricklin*, 594 F.3d at 1199. "Due to the common risk of harm and the common underlying legal theory," I cannot find that named plaintiffs' claims are atypical at this stage. *Id.*

2. Rule 23(b)

Plaintiffs must also satisfy one of the subsections of Rule 23(b). The Armato and DeQuasie plaintiffs bring their class action allegations under either Rule 23(b)(1), (b)(2), or (b)(3). ECF No. 138; Case No. 1-19-cv-01771-RBJ, ECF No. 1 at 8. The Cowen plaintiffs bring

their allegations only under either Rule 23(b)(2) or (b)(3).  ECF No. 59 at 16.  Defendants only

argue that plaintiffs fail to satisfy Rule 23(b)(2) because uniform declaratory relief is not

appropriate for all class members.  ECF No. 144.  They also argue that plaintiffs fail to satisfy

Rule 23(b)(3) because individual claims predominate over class claims.  *Id.*  Defendants do not

address DeQuasie and Armato plaintiffs' allegation that they meet the criteria for Rule 23(b)(1).

For the reasons that follow in more detail, I agree with the defendants that individual

issues predominate over class issues so as to rule out certification of a class under Rule 23(b)(3),

at least to the extent the question is whether an implied-in-fact contract was formed.  Rules

23(b)(1) and 23(b)(2), I have the same reservations.  The Court's ultimate task is to determine

whether a contract was formed, and I'm not convinced that the individual legal and factual issues

affecting that determination would disappear regardless of the subsection of Rule 23(b) one

attempts to apply.  But I can only address the issues the parties have briefed, and they have not

fleshed out their positions on (b)(1) or (b)(2).

a.   Rule 23(b)(2) Uniform Declaratory Relief

Class certification is appropriate under Rule 23(b)(2) where "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Defendants argue that plaintiffs requested relief of "some form of monetary damages, including

disgorgement or equitable restitution," which would entitle many class members to an individual

award.  ECF No. 144 at 11.  They argue this "renders class certification under Rule 23(b)(2)

impossible."  *Id.*

I have dismissed plaintiffs' requests for disgorgement or equitable restitution.  For

whatever reason defendants have not argued that uniform declaratory relief would be impossible

for plaintiffs' declaratory judgment claim on its own.  Because defendants do not raise the issue, I cannot dismiss plaintiffs' class action allegations under Rule 23(b)(2).

### b.  Rule 23(b)(3) Predomination of Individual Claims

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Defendants argue that in determining whether an express or implied-in-fact contract existed between defendants and the various plaintiffs, individual questions will predominate over the class questions.  ECF No. 144 at 12.  Defendants again note that each individual class member will have different state law and unique facts relevant to the determination of whether a contract existed.  *Id*.  Defendants acknowledge that there is a common question between class members—whether a contract existed—but argue that the individualized inquiry required to make such a determination will predominate over any common issues to the class.  As discussed regarding commonality section, Defendants list questions that will require individual determinations for each plaintiff that they argue will predominate the resolution of the plaintiffs' claims.

"Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members." *Wornicki*, 2015 WL 1403814, at *7 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (internal quotations omitted).  "However, the predominance criterion is 'far more demanding' than Rule 23(a)(2)'s commonality requirement." *Id.* (quoting *Amchem*, 521 U.S. at 624).

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In *Amchem*, the Supreme Court upheld the Third Circuit's finding that predominance was not met because each plaintiff's exposure to defendants' asbestos products was defined by "disparate questions undermining class cohesion," such as different length of exposure, product exposure, and different injuries. *Id.* at 624. Similarly, in *Pilgrim v. Universal Health Card, LLC*, the Sixth Circuit found individual issues predominated class issues because each of the nationwide class member's claims would be governed by their local state law, and though there was "*some* factual overlap," the overlapping factual issues did not predominate. 660 F.3d 943, 947–48 (6th Cir. 2011) (emphasis in original).

I agree with defendants that the resolution of each class member's unique legal and factual questions, at least as to whether a contract implied-in-fact was formed, inevitably will predominate over any class issues, preventing effective "class cohesion," and rendering class certification impossible under Rule 23(b)(3). *Amchem*, 521 U.S. at 623. I suspect that this is true with respect to whether an express contract was formed as well. However, I do not feel sufficiently informed concerning the parties' theories as to why there was or was not an express contract to make that finding at this time. I allow for the possibility that there could be something that is common to all members of some class that is relevant to the express contract issue, that overcomes legal and factual differences among individuals, and that makes class-wide resolution of the express contract issue possible and worthwhile.

Regarding the legal issues, merely determining which law will apply to a given class member illustrates the difficulty of class-wide resolution. Each of the plaintiffs' complaints define a nationwide class, which will naturally include parties who live in, and whose accident

occurred in, numerous different states. The Cowen complaint illustrates the issue: the Cowen

named plaintiffs include class members who live in and whose accidents occurred in Missouri,

Arizona, Alabama, one of whom was transported by defendants in Florida.  ECF No. 59 at 9–16.

As in *Pilgrim*, each class member's claim will need to be resolved under the applicable state

law's choice of law rules governing express and implied-in-fact contract formation.

Other courts have also found that such legal disparities preclude effective class

resolution.  *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015, 1018 (7th Cir.

2002) (reversing a district court's certification of a nationwide class in a contract and consumer

fraud suit involving allegedly defective tires, holding that such a class is rarely, if ever,

appropriate where each plaintiff's claim will be governed by the law of his own state); *Zinser v.*

*Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–90 (9th Cir.2001) (holding that variations in

state law greatly compounded the factual differences between claims, overwhelming any

common issues related to causation and making national class resolution impractical); *Szabo v.*

*Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Differences of [state law] cut

strongly against nationwide classes...."); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741

(5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common

issues and defeat predominance.").

Regarding the factual issues, plaintiffs' claims, as defendants have repeatedly pointed

out, are not just governed by different legal standards, but are factually distinct in important

ways as well.  Class members share in common that they or their next of kin experienced a

medical emergency and were transported by defendants via air ambulance.  However, the

remaining facts vary widely from member to member.  Some patients were conscious when

defendants arrived, some were not.  ECF No. 59 at 13–14; ECF No. 138 at 6, 10.  Some were

with family members who spoke with defendants, some were not.  ECF No. 59 at 10; ECF No. 138 at 9.  Some patients, family members, or patients' employees signed forms prior to transport, some did not.  Case No. 1-19-cv-01771-RBJ, ECF No. 1 at 67; ECF No. 59 at 10, 13, 15; ECF No. 138 at 8, 9, 10, 11.  The list goes on.  All these factual issues will require individualized resolution to determine whether contracts existed in each case between defendants and a particular class member.

In fact, in *Scarlett* the Tenth Circuit noted the fact-intensive inquiry required for determining the existence of an implied-in-fact contract, and that this court would have to examine "whether there was the necessary mutual assent to form a contract."  *Scarlett*, 922 F.3d at 1068.  Though some issues in this inquiry might be common throughout the class—such as whether any of defendants' forms obligate the plaintiffs in any way—most of the issues will be particular to the individual class member and defendants' conduct in the particular instance.  As in *Pilgrim*, the similarities between class members "establish only that there is *some* factual overlap, not a predominant factual overlap among the claims and surely not one sufficient to overcome the key defect that the claims must be resolved under different legal standards."  660 F.3d at 948.

Plaintiffs cannot satisfy the predominance requirement, and therefore I grant defendants' motion regarding plaintiffs' allegations under Rule 23(b)(3) with respect to whether or not an implied-in-fact contract was formed..

## ORDER

1.  Defendants' Motion to Dismiss the Armato Complaint, ECF No. 142, is GRANTED in part and DENIED in part.  The Court dismisses Armato's Count I insofar as it requests injunctive and non-declaratory relief and Count II for equitable restitution in its entirety.

2.  Defendants' Motion to Dismiss the DeQuasie Complaint, ECF No. 143, is GRANTED in part and DENIED in part.  The Court dismisses the DeQuasie plaintiffs' Count I insofar as it requests injunctive and non-declaratory relief.

3.  Defendants' Consolidated Motion to Strike Class Allegations from Cowen, DeQuasie, and Armato Complaints, ECF No. 144, is GRANTED in part and DENIED in part.  The Court grants the motion insofar as it asks the Court to strike plaintiffs' allegations under Rule 23(b)(3) with respect to the existence or non-existence of implied-in-fact contracts.

DATED this 8th day of May, 2020.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge