IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 16-cv-02723-RBJ
*Consolidated Cases: 17-cv-00485; 17-cv-00502; 17-cv-00509; 17-cv-00667; 17-cv-791; 19-cv-01771, and 19-cv-01951*

JEREMY LEE SCARLETT, on behalf of himself and all others similarly situated,

     Plaintiff,

v.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

     Defendants.

---

## ORDER ON PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

---

On May 11, 2021 this Court issued an order granting plaintiffs' motion for summary judgment. ECF No. 223. The Court entered final judgment on the next day. ECF No. 224. Both sides have since appealed. Meanwhile, plaintiffs filed a motion to alter or amend the judgment and ask the Court to address their motion for class certification on its merits. Additionally, though addressed in separate motions, the parties are disputing whether there was a "prevailing party" and, in effect, are asking the Court to alter or amend the judgment to address that dispute and to award costs. The Court addresses these issues in this order.

## BACKGROUND

### A. Initial Proceedings in District Court.

The background and history of this protracted litigation were discussed at length in the Court's summary judgment order. To put the present issues in context, I will retrace pertinent parts of that history in this order.

1

Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC (collectively "AMC") provide air ambulance services to patients experiencing medical emergencies when a physician or other qualified health care professional determines that air transport is medically necessary.  In addition to the doctor's certification, AMC requires completion of two documents for each patient: an Authorization and Consent form ("A&C"), and an Assignment of Benefits form ("AOB").  The A&C must be signed prior to transport, either by the patient, if possible; or by the patient's family member, if available; or an AMC employee, if neither the patient nor a family member is able or available to sign.  The AOB is completed and signed by the patient or family member following transport.

> The A&C and AOB forms both contain a financial responsibility provision that reads
>
> > I acknowledge that many insurers will only pay for services that they determine to be medically necessary and that meet other coverage requirements. . . .  If my insurer determines that the Services, or any part of them, are not medically necessary or fail to meet other coverage requirements, the insurer may deny payment for those Services. Notwithstanding any other provision herein, I agree that if my insurer denies all or any part of my provider's charges for any reason, or if I have no insurance, I will be personally and fully responsible for payment of provider's charges.

ECF Nos. 182, 182-1.

AMC unilaterally sets the price for its services.  It does not determine price based on any health-related services provided by EMTs while patients are in transit.  Rather, AMC uses two numbers to determine the cost of each flight: a base charge or "lift fee," which the patient will be charged regardless of the number of miles the helicopter travels; this charge generally is approximately $30,000; and a mileage rate of approximately $300.00 per mile.  Plaintiffs have alleged that the average cost is in the range of $47,000.  Following each flight, Air Methods bills the patient for its services based on these numbers.  Insurance pays about $12,000 on average, and the rest is the responsibility of the patient.

Neither the A&C form nor any other document provided to these patients or their representatives prior to transport mentions the price or how the price would be determined. There is no negotiation between AMC and the patients, or the patients' representatives, or the patients' healthcare providers, concerning the price of the service prior to transport. Indeed, patients are frequently unconscious at the time of transport. Furthermore, because time is of the essence, there would typically be no time to negotiate. Moreover, the A&C and AOB expressly provide that the financial responsibility provision cannot be modified by the patient or family member such as by striking or adding to its provisions.

This case was initially filed as a putative class action on November 4, 2016 by Jeremy Lee Scarlett. ECF No. 1. The *Scarlett* case was later consolidated with three similar cases filed in this district in 2017 (*Bartley, Adams, Stephens*). *See* ECF No. 60. Those cases, referred to as the Scarlett cases, were collectively brought by 35 named plaintiffs. Plaintiffs claimed that there was no express contract because they never agreed on a price, and that AMC breached implied contracts by charging more than the fair market value of the services. They sought declaratory and injunctive relief, including disgorgement of amounts already collected by AMC, damages, attorneys fees and costs.

Another putative class action filed in 2017, *Cowen v. Air Methods,* No. 17-cv-00791-RBJ, brought by five named plaintiffs, remained separate from the Scarlett cases because it pursued different theories. They sought a declaration that there were no contracts because there was no agreement on a price; or alternatively, that a contract for the reasonable value of the services is implied under federal common law; but that AMC breached the implied contracts by charging more than the reasonable value of the services. The Cowen plaintiffs asked the Court

to declare the appropriate method for determination of the reasonable value of the services;

restitution of amounts paid in excess of that amount; damages; costs and attorney's fees.

AMC moved to dismiss the *Scarlett* cases and the *Cowen* case on grounds that the claims

were preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713.  This Court

agreed, granted the motions to dismiss, and entered judgment in favor of AMC on May 25, 2018.

ECF Nos. 90, 92.

### B.  The First Appeal.

Plaintiffs appealed that decision, and the Tenth Circuit affirmed in part, reversed in part,

and remanded in part.  *Scarlett v. Air Methods Corp.,* 922 F.3d 1053 (10th Cir. 2019).  The court

agreed with AMC's preemption argument to the extent that it precluded the application of state

common law that would enable the Court to determine a reasonable price such on a contract

implied-in-law or unjust enrichment basis.  The court affirmed the dismissal of the *Scarlett* cases

which had relied on a contract implied-in-law theory.

However, the court held that parties could enter into an express contract or a contract

implied-in-fact that would not be preempted by the ADA.  A contract implied-in-fact is an

agreement '"founded upon a meeting of minds, which, although not embodied in an express

contract, is inferred, as a fact, from conduct of the parties showing, in the light of the

surrounding circumstances, their tacit understanding.'"  *Id.* at 1064 (quoting *Hercules, Inc. v.*

*United States,* 516 U..S. 417, 424 (1996)).  The court concluded that this Court construed the

Cowen plaintiffs' declaratory judgment claim too narrowly and remanded the case for this Court

to consider a single issue—whether the Cowen plaintiffs entered into an express or implied-in-

fact contract for defendants' emergency air transport services.  *Id.* at 1068, 1071.

### C.  Proceedings on Remand.

Following the remand, two new cases were filed that largely mimicked the Cowen case:

*Armato v. Air Methods,* No. 19-cv-01771-RBJ; and *Dequasie v. Air Methods,* No. 19-cv-01951-

RBJ.  Those cases were consolidated with the Cowen case under the *Scarlett v. Air Methods*

caption.  Thus, although the dismissal of the *Scarlett* cases was affirmed, and the remaining cases

filed by Cowen, Armato and Dequasie are all that remain in the case, the original caption lives

on.

The parties conducted discovery as to the facts applicable to each of the named plaintiffs

in the remaining three consolidated cases.  The Court did not permit class discovery, noting in a

minute order that it "will not authorize class-wide discovery at this time, and it has made it

reasonably clear that it is unlikely to certify a class in this case."  ECF No. 173.  My view was

that whether an express or an implied-in-fact contract had been formed would require findings of

fact applicable to each patient's individual case, so that class action certification appeared to be

problematic.

Following discovery, the Cowen plaintiffs, joined by Mr. Armato, filed a motion for

summary judgment.  ECF No. 181.  The Dequasie plaintiffs filed a motion for summary

judgment.  ECF No. 185.  Both motions sought declarations that neither an express contract nor a

contract implied-in-fact existed as to any of the named plaintiffs.  The Cowen plaintiffs

contended that the A&C and AOB forms did not create an express contract, and that the delivery

of care was insufficient to create an implied-in-fact contract.  ECF No. 181 at 19.  The Dequasie

plaintiffs sought a declaration that no express or implied-in-fact contract existed as to them.

Oddly, in view of the Tenth Circuit's holding and remand order, the Dequasie plaintiffs also

asked that if the Court were to find that there was an enforceable contract, it should rule under

Oklahoma law that AMC is limited to charging the reasonable value of its services.  ECF No.

185 at 18.  The motions were fully briefed, and on May 11, 2021 the Court entered its order

granting summary judgment in favor of the plaintiffs.  ECF No. 223.  That order is now on

appeal by both sides.

I need not repeat the Court's findings and conclusions from its summary judgment order,

as the order will speak for itself.  I will note, however, that the Court began its analysis of the

contract issues by noting the "peculiar" positions of the parties.  *Id.* at 11.  On the one hand,

although in each case someone signed the A&C and AOB forms, there was no mention of the

cost of the transport in those forms, nor was there any evidence that the cost had been discussed

with, let alone agreed by, any patient or family member.  AMC nevertheless insisted that a

contract had been formed requiring the patients to pay whatever amount AMC charged.  On the

other hand, the plaintiffs maintained that because no express or implied in fact contract was

formed, AMC could not collect any compensation for its services, and it should refund any

amounts already collected.

### D.  Class Certification Motions.

On September 3, 2020, the Cowen plaintiffs had filed a motion for class certification in

which they asked the Court to certify a class of "[a]ll persons who have been charged or to whom

charges have been submitted by Defendants for air medical transportation by Defendants from a

location in (a) Arizona, (b) Missouri, and/or (c) Alabama."  They also asked the Court to issue

appropriate notices to the class; to appoint the named plaintiffs as class representatives and their

counsel as class counsel; and to declare, as to those three classes, that no express or implied

contract had ever been formed between the members of the class.  Going one step further, the

6

Cowen plaintiffs asked the Court to declare that AMC is without legal authority to demand or to collect any payment for the transportation services provided to the class members.  Finally, they requested awards of attorney's fees and costs.  *Id.* at 15.

The Dequasie plaintiffs filed a separate motion to certify two classes: one class consisting of "[a]ll persons billed by Defendants for air ambulance transportation from a location in Oklahoma who <u>did not sign</u>, personally or through an authorized person, an Authorization and Consent Form," and another class consisting of "[a]ll persons billed by Defendants for air ambulance transportation from a location in Oklahoma who <u>signed</u>, personally or through an authorized person, an Authorization and Consent Form."  ECF No. 183 at 1 (emphasis added). Their motion did not specify additional relief sought, but in the Dequasie complaint plaintiffs requested, in addition to certification of the classes and designation of the named plaintiffs as class representatives and counsel as class counsel, damages, a constructive trust on amounts AMC had already but wrongfully collected, declaratory relief, injunctive relief, costs, interest and attorney's fees.  ECF No. 1 in Case No. 19-cv-01951-RBJ, at 30.

In the same order in which the Court granted plaintiffs' motion for summary judgment, I found that plaintiffs' respective motions for class certification were moot.  ECF No. 223 at 35.

### E.  <u>Motion to Alter or Amend</u>.

On June 8, 2021 the Cowen and Dequasie plaintiffs filed the pending joint motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e).  ECF No. 230.  AMC has responded in opposition, ECF No. 252; and plaintiffs have replied.  ECF No. 255.  While that briefing was taking place the parties also filed notices of appeal and cross-appeal.  ECF Nos. 235, 236, 237, 246.  The Tenth Circuit issued an order abating the appeals pending a decision by this Court on the motion to alter or amend.  ECF No. 256.

Plaintiffs argue that the issue of class certification was not moot, and that the Court failed to explain its finding of mootness or to identify which type of mootness applied. ECF No. 230 at 8-13. Next, they argue that the Court's findings on summary judgment "mandated" certification of a class. *Id.* at 13. That is so because the Court's summary judgment ruling was based on AMC's common protocols. In addition, plaintiffs insist that the Court expressly state that the eleven plaintiffs do not owe anything to AMC; that to the extent AMC has collected any amounts from AMC, the Court should order disgorgement; and that the Court should order AMC to contact credit bureaus and withdraw their claims from plaintiffs' credit reports.

With equal vigor AMC argues on both procedural and substantive grounds that the Court should deny the motion. Procedurally, it argues that plaintiffs have not provided a legal ground for altering or amending a judgment under Rule 59(e). Substantively, it denies there was evidence that AMC follows a standard "protocol" in billing, and it emphasizes what it characterizes as individualized defenses upon which it can rely as to class members. For example, an individual plaintiff might have Medicaid, which limits what can be billed to the patient. Also, there are patients with whom AMC has entered into settlements, and there are patients with whom AMC entered into a separate agreement after the transport as to the cost of the service.

In reply plaintiffs address the Rule 59(e) issue by saying that the Court "committed a clear error of law" by failing to conduct a rigorous analysis under Rule 23 and by failing to provide a rationale for its determination that their motion for class certification was moot. Plaintiffs reiterate that they are "entitled" to class wide discovery, and that AMC did have protocols under which the same billing procedure is applied in every case.

### E. <u>Costs</u>.

Neither the Court's order granting summary judgment nor the Final Judgment identified a prevailing party for purposes of an award of costs pursuant to Fed. R. Civ. P. 54(d)(1) or D.C.COLO.LCiv.R 54.1.  Nevertheless, the Cowen plaintiffs filed a bill of costs in the amount of $9,841.48.  ECF No. 229.  They later filed an amended bill of costs in the amount of $9,252.20.  ECF No. 245.  The Dequasie plaintiffs filed a bill of costs in the amount of $6,340.  ECF. No. 232.  They later filed an amended bill of costs in the amount of $3,785.13.  ECF No. 244.  AMC filed a bill of costs in the amount of $13,296.60.  ECF No. 234.  AMC objected to the Cowen plaintiffs' bill of costs, arguing that AMC was the prevailing party.  ECF No. 257.  AMC objected to the Dequasie plaintiffs' bill of costs, arguing either that either AMC was the prevailing party or that there was no prevailing party.  ECF No. 258.

The Clerk, attempting to determine who was the prevailing party for purposes of taxation of costs, concluded that AMC, the Dequasie plaintiffs, and the Cowen plaintiffs were all prevailing parties under Rule 54(d)(1).  He further noted that none of the parties objected to the amounts of costs claimed by other parties.  He awarded AMC costs of $13,296.60 and the Dequasie plaintiffs costs of $3,785,13.  However, because the Cowen plaintiffs' counsel did not appear for the Clerk's hearing on costs, he awarded no costs to them.  *See* ECF Nos. 259-261.

Plaintiffs objected.  The Cowen plaintiffs disputed the Clerk's right to expect their counsel to appear for the Clerk's hearing on costs.  ECF No. 262.  The Dequasie plaintiffs reiterated their position that plaintiffs were the prevailing parties and, while they did not object to the award of costs in their favor, they objected to any award to AMC.  ECF No. 263.  AMC has

not yet responded to those objections, but the Court invokes its right to decide these costs-related

motions without further briefing.  *See* D.C.COLO.LCivR 7.1(d).

## CONCLUSIONS

### A.  <u>Motion for Class Certification</u>.

The Court is not persuaded by AMC's procedural objection.  As defendants

acknowledge, a Rule 59(e) motion may be granted on, among other grounds, the need to correct

clear error or prevent manifest injustice.  *See, e.g., Monge v. RG Petro-Machinery (Group) Co.*

*Ltd.,* 701 F.3d 598, 611 (10th Cir. 2012).  That provides a great deal of latitude for courts to

correct errors.  Having reviewed the parties' briefs, I conclude that the motion for class

certification was not "moot."  However, the result does not change.  The Court now denies the

motion for class certification.  I do so for several reasons.

First, this Court was ordered on remand to determine whether the Cowen plaintiffs

entered into either an express or an implied contract with AMC.  I did that.  Because the

Dequasie plaintiffs filed claims similar to the Cowen plaintiffs after the remand order, I included

them with the Cowen plaintiffs in answering the question.

Second, I do not in any event find that the case qualifies for class certification under Rule

23.  I will assume for present purposes that the Court could define a class that would satisfy the

prerequisites of Rule 23(a).  Numerosity, common questions and adequacy of representation are

relatively clear.  To satisfy Rule 23(a)(2), the Court must find that the claims or defenses of the

representative parties are typical of the claims or defenses of the class.  "[T]ypicality exists

where . . . all class members are at risk of being subjected to the same harmful practices,

regardless of any class member's individual circumstances."  *D.G. ex rel. Stricklin v. Devaughn*,

594 F.3d 1188, 1199 (10th Cir. 2010).  AMC's practice of billing based on its base rate plus a

10

mileage rate with no discussion of price or its billing methodology with the patient or patient's representative was its standard practice.  AMC has pointed out that in some cases it has entered into post-transport agreements regarding the cost of the service, and in others it has not attempted to collect the full fee or even any fee.  Still, most patients were at least at risk of being subjected to the same billing practices regardless of their individual circumstances, and the Court could define a class as to which the eleven named plaintiffs were typical.  But I would not find that Rule 23(b)(2), which is the part of Rule 23(b) on which plaintiffs rely, has been met.

Rule 23(b)(2) requires a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, *so that final injunctive relief or corresponding declaratory relief is appropriate* respecting the class as a whole."  (emphasis added).  I do not find that injunctive or declaratory relief , both being equitable remedies, are appropriate for class wide application in the circumstances presented.  AMC's view is that it can bill patients whatever it decides to bill them, without any determination of the reasonable value of the service provided.  They are, in this Court's view, taking advantage of the patients at a time when they are at their most vulnerable and in no realistic position to decline the service.  On the other hand, plaintiffs' position is also inequitable.  They are asking the Court to declare, not just for the eleven patients, but with respect to tens if not hundreds of thousands of patients that they do not have to pay AMC anything for the transport; and, indeed, that AMC must refund anything that the patient, or the patient's family, or the patient's insurance carrier has already paid.  Sending out notices inviting tens or hundreds of thousands of patients to believe that they needn't pay anything for the valuable, often life-saving, service provided by AMC would be ridiculous.

AMC is clearly on notice that the Court has declared that the A&C and AOB forms and AMC's standard procedure do not create an enforceable agreement.  Absent some additional

11

conduct that clearly demonstrates an agreement to price or at least to the methodology for determining the price, there is no contract.  If AMC were to attempt to bill patients using its standard methods before the Tenth Circuit resolves the pending appeals, it will in my view be acting irresponsibly and at its own risk.  I will not speculate that AMC will do this.

I am aware that a huge but unspoken issue here is plaintiffs' attorney's fees.  Plaintiffs' counsel have labored hard and long, and they have exposed a serious problem in AMC's billing practices.  I presume that they have not been compensated for their time.  But attorney's fees cannot drive my resolution of the issue on its merits.  The parties created the present untenable situation by their refusal to settle the dispute on reasonable terms.  In my view, it is time for them to reconsider their positions, to reach a resolution that applies beyond the eleven plaintiffs, and to take into consideration reasonable compensation for counsel.

For the foregoing reasons, plaintiffs' motion to alter or amend judgment, ECF No. 230, is granted in part and denied in part.  It is granted to the extent that the Court vacates the portion of its previous order, ECF No. 223, finding plaintiffs' motions for class certification to be moot.  However, it denies the motion to the extent that plaintiffs moved for certification of a class.  The Court denies plaintiffs' motions for class certification, ECF Nos. 179 and 183.  An Amended Final Judgment will so provide.

### B.  Costs.

Costs other than attorney's fees should be allowed to the "prevailing party" unless the Court provides otherwise.  Rule 54(d)(1).  *See Roberts v. Madigan,* 921 F.2d 1047, 1058 (10th Cir. 1990).  Costs, if awarded, are taxed by the Clerk, subject to review by the Court if requested within seven days of the Clerk's action.  *Id.*  This district's local rules clarify the procedures for submitting bills of costs and obtaining judicial review.  *See* D.C.COLO.LCiv.R. 54.1.

In this instance the Court did not designate a prevailing party or determine that any party was entitled to costs.  Nevertheless, after obtaining an extension of time, each party, after conferring, filed a bill of costs as noted above.  The Clerk made a valiant attempt to determine a prevailing party, but it was next to impossible for him to make the determination, and it was not his responsibility anyway.

A good argument can be made that there was no prevailing party.  AMC prevailed to an extent on preemption.  But the named plaintiffs prevailed on the express and implied-in-fact contract arguments on remand.  The plaintiffs failed to gain class certification, so one could say that AMC came out ahead on that issue, albeit not for the reasons provided in their brief.

Nevertheless, the Court now finds that plaintiffs were the "prevailing parties" on the issues specific to the eleven named plaintiffs themselves.  There is no enforceable contract requiring them to pay AMC.  The Court vacates the costs awards provided by the Clerk.  Because AMC did not object to the amounts requested, the Court will award costs to the Cowen plaintiffs of $9,252.20.  The Court will award costs to the Dequasie plaintiffs of $3,785.13.  The Amended Final Judgment will so provide.

DATED this 30th day of August, 2021.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

13